# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| ADRIAN FRANCIS | |
| --- | --- |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 17-24-JWD-EWD |
| EUGENE MONROE, ET AL. | |

## RULING AND ORDER

This matter comes before the Court on the *Objection to Magistrate Judge's Report and Recommendation* (Doc. 17) filed by Plaintiff Adrian S. Francis. Defendants Eugene Monroe and Erie Mutual Fire Insurance Company ("Erie Mutual") (collectively, the "Monroe Defendants") oppose the objection. (Docs. 19, 23.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.

For the following reasons, the Plaintiff's objection is sustained. Plaintiff is hereby given leave to file his amended complaint to assert claims of negligence against Thaddeus Holmes and his insurer. Consequently, complete diversity is destroyed, and the Court lacks subject matter jurisdiction. Accordingly, this suit is remanded to the 19th Judicial District Court for the Parish of East Baton Rouge.

I. **Relevant Factual and Procedural Background**

A. **State Court Proceeding**

This is an automobile accident case. On August 9, 2016, Plaintiff filed her original Petition for Damages in Louisiana state court. (Doc. 1-2 at 5.) Plaintiff alleged that, on or about March 24, 2016, around 11:00 a.m., Plaintiff was driving north on Airline Highway. (*Id.*) Plaintiff had arrived at the intersection of Airline and St. Katherine when traffic slowed in the

northbound inside lane "when Eugene Monroe crashed the 2016 GMC Yukon into a second vehicle causing the second vehicle to crash into the rear of a 2000 Mitsubishi Gallant driven by Adrian S. Francis thereby causing the Francis Mitsubishi to crash into the rear of a fourth vehicle[,]" which "crashed into the rear of a fifth vehicle." (*Id.*) Plaintiff also asserted: "Additionally, or in the alternative, . . . the sole and proximate cause of said crash was the . . . negligence and fault of defendant Eugene Monroe . . ." (*Id.* at 6.) Plaintiff also sued "Erie Fire Insurance Company" (Monroe's alleged insurer), "ABC Company" (Monroe's alleged employer), and XYZ Insurance Company (ABC Company's alleged insurer). (*Id.*)

On November 30, 2016, Plaintiff filed an Amended Petition. (Doc. 1-2 at 3.) Plaintiff changed Monroe's insurer to "Erie Mutual Fire Insurance Company" and made certain tweaks to reflect this. (Doc. 1-2 at 3–4.)

### B. Federal Court Proceedings

On January 11, 2017, this action was removed to this Court by the Monroe Defendants. (Doc. 1.) They alleged diversity jurisdiction. (Doc. 1 at 2.)

On January 18, 2017, the Monroe Defendants filed their answer. Therein, Erie Mutual and Monroe "ple[]d the negligence of plaintiff and/or third parties for whom Monroe and Erie are not responsible in bar or mitigation of plaintiff's claim for damages." (Doc. 2 at 5.) The Monroe Defendants also denied Plaintiff's allegations of fault for lack of information sufficient to form a belief therein. (*Id.* at 1–2.)

On January 31, 2017, Plaintiff filed a motion to enroll additional counsel, specifically Kirk A. Guidry, Randolph A. Piedrahita, and B. Scott Andrews of the firm Due Guidry Piedrahita Andrew L.C. (Doc. 4.) On February 2, 2017, the motion was granted. (Doc. 5.)

2

On February 22, 2017—about a month after the Monroe Defendants' claimed third party fault and denied liability and less than three weeks after additional counsel enrolled for the Plaintiff—one of Plaintiff's new counsel of record filed the instant *Motion for Leave to File Amended Complaint for Damages to Add Additional Parties* (Doc. 6.) In the motion, Plaintiff acknowledges that "Plaintiff's original complaint only names the operator of the fifth vehicle, Eugene Monroe, and one of his insurers." (*Id.* at 1.) After citing the rule on comparative fault in Louisiana, Plaintiff refers to that part of the Monroe Defendants' answer that pleads the negligence of third parties. (*Id.* at 2.) Plaintiff then asks to name the non-diverse driver of the fourth vehicle, Thaddeus Holmes, and "his insurer as additional defendants, whose joinder will destroy subject matter jurisdiction." (*Id.*) Plaintiff also seeks "to add additional diverse defendants who may owe all or part of any damages determined to be owed to plaintiff by defendant, Eugene Monroe." (*Id.*) Plaintiff claims that "[s]ubstantial injustice" will result if she is not permitted to add the new parties. (*Id.*) The substance of the amended *Complaint for Damages* (Doc. 6-2) will be addressed below.

### C. The Magistrate Judge's Report and Recommendation

On June 30, 2017, the *Magistrate Judge's Report and Recommendation* (Doc. 16) ("R&R") was issued. The R&R concluded that the motion for leave to amend should be granted as to the diverse defendants but denied as to Thaddeus Holmes and his insurer, the non-diverse defendants. (*Id.* at 2.)

The R&R explained that the appropriate standard to apply came from *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987), explaining:

> "The district court, when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). When determining whether to allow joinder of a non-diverse party under

3

§ 1447(e), "justice requires that the district court consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits." *Id*. The *Hensgens* factors include: (1) the extent to which the purpose of the amendment is to defeat diversity; (2) whether the plaintiff has been diligent in requesting an amendment; (3) whether the plaintiff will be prejudiced if the amendment is denied; and (4) any other factors bearing on the equities. *Id*.

(Doc. 16 at 7.) The R&R applied these factors and found in favor of the Monroe Defendants.

As to the first factor, the R&R found that the "timing of the proposed amendment in this case (approximately six weeks after the Notice of Removal was filed and approximately six months after the Petition was filed) suggests that, at the very least, part of Plaintiff's purpose in seeking to amend her Petition is to defeat federal jurisdiction." (*Id.* at 10.) The R&R found, based on certain pieces of evidence,[1] that the "Plaintiff knew about Holmes' role in the underlying accident when she filed her original Petition." (*Id.*) The R&R asserted that Plaintiff provided no explanation for why Holmes was not added as a defendant earlier. (*Id.* at 11.) The R&R also concluded, "Although some courts have also considered whether the plaintiff states a valid claim against the proposed additional defendant when analyzing the first *Hensgens* factor [(footnote collecting cases omitted)], the parties have alleged insufficient information to permit evaluation of the viability of Plaintiff's negligence claim against Holmes." (*Id.* at 12.)

As to the second factor (the Plaintiff's diligence), the R&R found that Plaintiff was dilatory in seeking leave to amend. (Doc. 16 at 13.) The R&R cited to numerous cases finding that a delay of two months both was and was not excessive in seeking leave to amend. (*Id.* at 13–14.) Though acknowledging that "no pretrial or trial dates have been scheduled and no

---

[1] The R&R specifically looked at (1) an April 5, 2016, letter from Plaintiff's counsel to a claims representative that described the chain reaction caused by the initial collision; (2) the police report for the accident, which disclosed Holmes' identity and also described the "chain reaction"; and (3) a recorded statement given by Plaintiff to Erie Mutual on April 1, 2016, where Plaintiff stated that she remembered seeing the vehicle behind her stopped at the time of the accident and said, "Everybody was at a stop. The only person I remember seeing was the person who hit the person that was made the person – hit me."(Doc. 16 at 10–11 (citations omitted).)

4

significant activity beyond the pleading stage has occurred," the R&R stated that the delay of almost three months after the Amended Petition and about six months after the original Petition was too long, particularly when Plaintiff had information about Holmes' identity and involvement in the car accident. (*Id.* at 14–15.)

Concerning the third factor (prejudice to the plaintiff), the R&R stated:

> [C]ourts consider whether the already named diverse defendant would be unable to satisfy a future judgment and whether the plaintiff could recover against the proposed nondiverse defendant. See, [*Gallegos v. Safeco Ins. Co. of Indiana*, No. 09-2777, 2009 WL 4730570, at *5 (S.D. Tex. Dec. 7, 2009)] (citing *Irigoyen v. State Farm Lloyds*, 2004 WL 398553, at *5 (S.D. Tex. Jan. 5, 2004)). In addition, "considerations of cost, judicial efficiency and possible inconsistency of results militate in favor of not requiring plaintiff[s] to prosecute two separate claims in two forums when both arise from the same set of facts and circumstances." *Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664, 670 (E.D. La. 2007) (quotation omitted).

(Doc. 16 at 15.) The R&R recognized that "Plaintiff may be prejudiced if she is not allowed to amend her Petition to name Holmes and USAA as defendants in this case" and that "Plaintiff may be barred from re-asserting her claims against Holmes under Louisiana's one-year prescriptive period for negligence claims[.]" (*Id.* at 16.) But the R&R found:

> However, because Plaintiff had two opportunities to add Holmes as a defendant prior to removal, any prejudice that results from denying Plaintiff leave to amend her Petition is the direct result of Plaintiff's failure to name Holmes as a defendant in her original Petition or in her Amended Petition, despite the fact Plaintiff knew Holmes' identity and his role in the underlying accident when the original Petition was filed and amended in state court. As such, this factor weighs only slightly in favor of the Plaintiff.

(*Id.*)

Lastly, the fourth *Hensgens* consideration ("other equitable factors") weighed "slightly" in the Monroe Defendants' favor. (Doc. 16 at 16–17.) Plaintiff did "not assert the possibility that parallel federal and state proceedings may cause inconsistent results and a waste of judicial resources," but the Monroe Defendants did state that they would be prejudiced since "the matter

5

will be remanded to state court, potentially depriving [Monroe] Defendants of a properly invoked federal forum." (Doc. 16 at 17.)

## II. Standard of Review

The Magistrate Judge noted that, because a determination of the Plaintiff's motion for leave to amend "will determine whether this Court continues to have diversity jurisdiction over this matter, and thus whether or not this matter should be remanded to state court, the motion is dispositive and a report and recommendation, rather than a ruling, is being issued relative to such motion." (Doc. 16 at 2 n. 3 (citing *Vessell v. Wal-Mart Stores, Inc.*, 2008 WL 2700010, at *2 n. 2 (M.D. La. July 9, 2008).) This Court agrees. *See Davidson v. Georgia-Pacific., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("hold[ing] [that] a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review."). The parties do not contest this.

Accordingly, this Court will apply the standard of review used in deciding dispositive motions. In resolving such objections, this Court "must determine de novo any part of the magistrate judge's position that has been properly objected to." Fed. R. Civ. P. 72(b)(3). This Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

## III. Parties' Arguments

Plaintiff contends that the R&R incorrectly applied the *Hensgens* factors. (Doc. 17 at 3.) First, the purpose of the amendment was not to defeat diversity. (*Id.* at 4.) Plaintiff argues that original counsel did not assert claims against Holmes "because he reasonably believed at the time that Monroe was solely at fault." (*Id.*) Plaintiff did not realize that Holmes might be liable until Monroe's answer, in which the Monroe Defendants denied liability and claimed third party

6

fault, and then only coupled with Dr. Isaza's report, wherein Plaintiff recounts being "hit a second time from the rear." (*Id.* at 2 (citing Pl. Ex. 2).) Because of Louisiana's comparative fault law, Plaintiff had to, at this point, join the other rear-ending motorist. Further, Plaintiff contends that she has asserted a viable claim against Holmes given the presumption of negligence for a following motorist in a rear-end collision. (*Id.* at 8.)

Plaintiff also maintains that she was not dilatory in seeking an amendment. (Doc. 17 at 6.) There are no pretrial or trial dates scheduled. (*Id.*) Moreover, the motion for leave to amend was filed 20 days after new counsel enrolled for the Plaintiff; 35 days after the answer was received denying liability and claiming third-party fault; and 42 days after the notice of removal. (*Id.* at 7)

Plaintiff also claims prejudice if leave to amend is denied. (*Id.*) Plaintiff asserts that she has a valid claim against Holmes and his insurer and that, if she is forced to bring a section action against them in state court, her claim may have prescribed. (*Id.* at 8.)

Lastly, Plaintiff argues that "other equitable factors" weigh in her favor. (Doc. 17 at 8.) Specifically, if leave to amend is denied, Plaintiff will have to file a separate suit and conduct parallel proceedings. (Doc. 17 at 8–9.)

The Monroe Defendants respond that Plaintiff does not deny that she was aware of the facts as well as the identities of Holmes and his insurer. (Doc. 19 at 1.) The Monroe Defendants state: "if negligence is presumed, and Mr. Holmes is indeed a potentially liable third-party, then why not include him in the original petition? Or the amended petition?" (*Id.* at 1–2.) Additionally, the answer did not identify who was potentially liable, and there's no indication that Dr. Isaza's notes were not received earlier. (*Id.* at 2.) As to prejudice, the Monroe Defendants state that Plaintiff cannot dispute that she had two opportunities to add Holmes and

7

his insurer as a Defendant, yet she did so only after the action was removed. (*Id.*) In their supplemental brief, the Monroe Defendants show that Dr. Isaza's report was e-mailed to Plaintiff's original counsel on August 11, 2016, shortly after the original Petition was filed in state court. (Doc. 23 at 1, 23-1, 23-2.)

## IV. Discussion

### A. Relevant Standards

The R&R set forth the correct general standard governing this motion. It need not be repeated here in full. Nevertheless, this Court wishes to emphasize certain parts of that standard.

"Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend 'shall be freely given when justice so requires.'" (Doc. 16 at 6 (quoting Fed. R. Civ. P. 15(a)(2)).) "The Fifth Circuit has strictly followed this rule, stating that 'leave to amend should be granted liberally.'" (*Id.* (quoting *Robertson v. Plano City of Texas*, 70 F.3d 21, 22 (5th Cir. 1995)).)

Additionally, "[t]he removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." (Doc. 16 at 8 (citing *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007)).) "The removing party has the burden of proving federal diversity jurisdiction." (Doc. 16 at 8 (citing *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003)).)

Most importantly, the R&R set forth the correct four *Hensgens* factors (described above) in assessing whether the amendment should be allowed. However, because the R&R did not take into account certain critical facts (partly because it lacked relevant evidence), and because the Court disagrees with the R&R's application of *Hensgens* factors, the Court finds that the Plaintiff's objection should be sustained. The Court now turns to the *Hensgens* factors

8

### B. The amendment was not to defeat diversity

#### 1. Timing

Concerning the first factor—the extent to which the purpose of the amendment is to defeat diversity—the Court finds that this factor weighs in the Plaintiff's favor. As to timing, the R&R focuses on two things: (a) the fact that the proposed complaint was filed about six weeks after the Notice of Removal and about six months after the original Petition and (b) the Plaintiff's prior knowledge of Holmes' involvement. (Doc. 16 at 9–12.) From these points, the R&R concludes that the Plaintiff acted to defeat diversity. (*Id.*)

But the R&R does not give proper weight to two key events. The first is Monroe Defendants' answer, which denied liability and claimed third party fault. (*See* Doc. 2.) The second is the enrollment of additional counsel for the Plaintiff, which does not appear to have been considered by the R&R. (*See* Docs. 4, 5.) Critically, the motion for leave to amend was filed only about a month after the Monroe Defendants' answer and only about three weeks after Plaintiff got more attorneys. The Court finds that these two events strongly suggest that the purpose of the amendment was not to defeat diversity but rather to assert claims against potentially liable parties.

The Monroe Defendants argue that Plaintiff's counsel had Dr. Isaza's physician note early in the litigation and that this shows the proposed amendment's questionable timing. But the evidence does not support this conclusion. Dr. Isaza's note stated:

> By patient's history she was involved in a motor vehicle accident on March 24, 2016.
> In this accident patient was the restrained driver of a vehicle that was at a stop. She was hit from behind and the impact pushed her into the vehicle in front.
> She was then hit a second time from the rear.

(Doc. 17-2 at 2.)

9

But, as Plaintiff contends, the accident history contained in Dr. Isaza's physician note was inconsistent with the investigating officer's conclusion that Monroe was solely at fault. The officer who wrote the report stated that Monroe's violation was "FOLLOWING TOO CLOSELY" (Doc. 9-2 at 3) while Holmes had "NO VIOLATION" (*Id.* at 5.)

Thus, Dr. Isaza's note and other evidence relied upon by the R&R do not indicate that Plaintiff definitively knew of Holmes' liability early. The Court finds that it was only after the Monroe Defendant's answer did the Plaintiff have a clear warning that Holmes was potentially liable. About two weeks later, Plaintiff had additional counsel enroll, and, about three weeks thereafter, Plaintiff sought leave to amend. The Court again concludes that the timing of the proposed amendment does not suggest that it was intended solely to defeat diversity. Rather, this timing was reasonable under the circumstances.

### 2. Viable Claim

Additionally, the R&R acknowledges that "some courts have also considered whether the plaintiff states a valid claim against the proposed additional defendant when analyzing the first *Hensgens* factor," but the R&R goes on to find that "the parties have alleged insufficient information to permit evaluation of the viability of Plaintiff's negligence claim against Holmes." (Doc. 16 at 12 n. 29 (collecting cases).) The Court disagrees.

First, the proposed *Complaint for Damages* (Doc. 6-2) alleges:

> On March 24, 2016, a 2000 Mitsubishi Galant owned and being operated by **Adrian S. Francis** was rear-ended in a multi-vehicle collision on Airline Highway in Baton Rouge, Louisiana, by rental 2016 GMC Yukon being operated by **Eugene Monroe**, and/or by a 2006 Toyota Rav 4 being permissively operated by **Thaddeus Holmes**.

(*Id.* at 2). Thus, Plaintiff clearly alleges that both Monroe and Holmes are at fault. Though the Plaintiff uses "or" as well, plaintiffs are entitled to plead claims in the alternative. Fed. R. Civ. P. 8(a)(3).

Plaintiff also seeks to allege:

> The collision sued on is inexplicable without resort to the presumption of negligence and applicability of the doctrine of *res ipsa loquitur* in view of the fact that the defendant vehicles operated by **Eugene Monroe** and **Thaddeus Holmes** caused the rear of plaintiff's vehicle to be struck, which presumption and doctrine are especially invoked by plaintiff herein.

(Doc. 6-2 at 2.) Plaintiff thus attempts to use the doctrine of *res ipsa* on Monroe *and* Holmes, further reinforcing that Holmes is potentially liable.

Plaintiff also specifically claims:

> Additionally, or in the alternative, a cause of the collision sued on was the fault of **Thaddeus Holmes**, which consisted of his:
> A) Violations of the Louisiana Highway Regulatory Act;
> B) Striking another vehicle in the rear;
> C) Failing to take appropriate action to avoid a crash;
> D) Failing to maintain proper control of the vehicle;
> E) Failing to see what he should have seen; and
> F) Failing to exercise the required degree of care commensurate with the existing situation.

(*Id.* at 2–3.) As a result, this paragraph provides specific allegations of fault on the part of Holmes.

The evidence submitted by Plaintiff in support of her objection also supports imposing liability on Holmes. Specifically, Plaintiff's voluntary statement provides: "I was hit by 5 cars yesterday on Airline Hwy. I was at a complete stop in my seat belt wen [sic] 4 other cars hit me and I hit the vehicle in front of me. . . ." (Doc. 17-1 at 1.) This document was a part of the Uniform Motor Vehicle Traffic Crash Report for the accident. Though the Monroe Defendants filed part of this record (*See* Doc. 9-2), they did not include the Plaintiff's voluntary statement, so the R&R did not have the benefit of this document in assessing the viability of Plaintiff's claim.

In sum, the Court finds that neither the timing nor the viability of the Plaintiff's claim indicate that the Plaintiff joined Holmes to defeat diversity. Plaintiff amended her complaint to assert a potentially viable claim after retaining additional counsel. As a result, this first factor weighs in the Plaintiff's favor.

### C. The Plaintiff was not dilatory

On the second *Hensgens* factor, the Court reiterates what was stated above; the amendment was sought about a month after the Monroe Defendants' claimed third party fault and denied liability and less than three weeks after additional counsel enrolled for the Plaintiff. No pretrial or trial deadlines had been set in this case. Under these circumstances, the Court finds that the Plaintiff was not dilatory.

### D. Plaintiff will be substantially prejudiced if the amendment is denied.

Concerning the third *Hensgens* factor, the R&R found that the Plaintiff will be prejudiced if the amendment is not allowed. First, as the R&R stated, there is a presumption of negligence for a following motorist in a rear-end collision (Doc. 16 at 15 (citing *Mart v. Hill*, 505 So 2d 1120, 1123 (La. 1987)).) Second, the Plaintiff's claims could be barred if she were required to initiate a second action. (Doc. 16 at 16.) However, because the prejudice was purportedly caused by Plaintiff's own fault, the R&R concluded that this factor weighed "only slightly" in Plaintiff's favor. (*Id.*)

The Court again disagrees and concludes that additional factors warrant a finding that this factor weighs strongly in Plaintiff's favor. As the R&R stated, "considerations of cost, judicial efficiency and possible inconsistency of results militate in favor of not requiring plaintiff[s] to prosecute two separate claims in two forums when both arise from the same set of facts and circumstances." (*Id.* at 15 (citing *Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664, 670 (E.D. La.

2007) (quotation omitted)).) If leave is denied, the best case scenario (assuming Plaintiff's claim is not prescribed) is that the Plaintiff will have to litigate a second suit in state court against different defendants. This would tax judicial resources in two court systems and certainly creates the possibility of inconsistent results.

For those reasons and the ones articulated above, the Court finds that the third *Hensgens* factor weighs strongly in favor of the Plaintiff.

### E. Other Equitable Factors are Neutral

As to the final *Hensgens* factor, the R&R properly recognized: "Although equitable factors include whether granting leave to amend would deprive a defendant of a properly invoked federal forum and . . . would result in parallel state court proceedings, these factors are likely to be present whenever a plaintiff in a removed case seeks to add a no diverse defendant." (Doc. 16 at 16–17 (citing *Gallegos*, 2009 WL 4730570 at *5 (citing *Smith v. Robin Am., Inc.*, 2009 WL 2485589, at *6 (S.D. Tex. Aug. 7, 2009); *Tomlinson v. Allstate Indem. Co.*, 2006 WL 1331541, at *6 (E.D. La. May 12, 2006)).) The R&R noted that the Plaintiff had not asserted the possibility of parallel proceedings, but the Defendant had argued that he would be deprived his federal forum. (Doc. 16 at 16.) Thus, the R&R concluded that this factor "weigh[ed] slightly in favor of [the Monroe] Defendants." (*Id.*)

However, in Plaintiff's objection to the R&R, Plaintiff now asserts that that a denial of their motion would result in parallel proceedings. Consequently, both Plaintiff and the Monroe Defendants have equitable considerations on their sides, and the Court concludes that this final *Hensgens* factor is neutral.

### F. Summary

Three of the *Hensgens* factors weigh in the Plaintiff's favor, and one of them does so very strongly. The final factor is neutral. As a result, the Court finds that the Plaintiff's motion for leave to amend should have been granted. Holmes and his insurer will now be joined as a Defendant. Consequently, complete diversity is destroyed, and this suit should be and is remanded to state court.

### V. Conclusion

According,

**IT IS ORDERED** that the *Objection to Magistrate Judge's Report and Recommendation* (Doc. 17) is **SUSTAINED**. The Plaintiff's *Motion for Leave to File Amended Complaint for Damages to Add Additional Parties* (Doc. 6) is hereby **GRANTED**, and the *Complaint for Damages* (Doc. 6-2) shall be filed into the record. Consequently, Defendants Thaddeus Holmes and United Services Automobile Association are added as parties.

**IT IS FURTHER ORDERED** that, because Holmes is now a defendant, complete diversity has been destroyed. As a result, this Court no longer has subject matter jurisdiction, and this matter is hereby **REMANDED to the 19th Judicial District Court for the Parish of East Baton Rouge.**

Signed in Baton Rouge, Louisiana, on September 25, 2017.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**